**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| THEODORE J. THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 2:08-cv-00518-RCJ-PAL |
| vs. | ) | |
| | ) | |
| LIED ANIMAL SHELTER et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

This case arises out of the euthanization of Plaintiff Theodore J. Thompson's pet dog "Zues." Pending before the Court are Defendant's Motion to Dismiss (#23) and Plaintiff's Motion for Default Judgment (#27). For the reasons given herein, the Court grants the Motion to Dismiss (#23) under Rule 12(b)(6) with prejudice as to the intentional infliction of emotional distress and negligent infliction of emotional distress claims, denies the Motion to Dismiss (#23) under Rule 12(b)(1), and denies the Motion for Default Judgment (#27).

**I.      FACTS AND PROCEDURAL HISTORY**

According to the Second Amended Complaint ("SAC"), on or about Friday, February 12, 2007, Plaintiff left his thirteen-month-old puppy, Zues, with an unidentified person ("the dog sitter") in Nevada, while Plaintiff went to California. (#12 ¶ 1). When the puppy refused to eat, the dog sitter became concerned, and after attempting unsuccessfully to contact Plaintiff by phone, took Zues

to Defendant V.C.A. Animal Hospital ("VCA")[1] at Spring Mountain Rd. and Decatur Blvd. in Las Vegas, leaving him there with a note containing Plaintiff's name and cell phone number. (*Id.* ¶¶ 2–3). When Zues became uncooperative, VCA called the City of Las Vegas Animal Control to request that Zues be taken to a city animal shelter, without calling Plaintiff. (*Id.* ¶ 4).

On Monday, February 15, an unknown female employee from VCA called Plaintiff ("the VCA Call"), informing him of the foregoing and that it was Plaintiff's responsibility to monitor Zues's status. (*Id.* ¶ 6). Plaintiff immediately called ("the Lied Call") Defendant Lied Animal Shelter ("Lied"), a female employee of which ("the Lied Employee") informed Plaintiff that Zues had indeed arrived at Lied on the previous Friday and was still in the intake unit. (*Id.* ¶¶ 7–8). The Lied Employee explained that Zues would be kept in the intake unit for thirteen (13) days, after which time he would be relocated to the adoption unit if not claimed, assuring Plaintiff that Zues would be safe for thirteen (13) days and that Zues would be safe from the disease that had caused over one-thousand euthanizations several weeks earlier. (*Id.* ¶¶ 10–11). Plaintiff explained to the Lied Employee that Zues was "all he had, and the only thing close to a child he'd ever had," and that he would make arrangements for Zues to be picked up as soon as possible if any emergency arose, so as to ensure Zues's safety. (*Id.* ¶¶ 12–13). The Lied Employee denied that there was any emergency and assured Plaintiff that he had ten (10) more days to claim Zues. (*Id.* ¶ 13).

Plaintiff returned to Las Vegas on the night of Friday, February 19. (*Id.* ¶ 14). On the morning of Saturday, February 20—eight (8) days after Zues's intake at Lied, and five (5) days after the Lied Employee assured Plaintiff that Zues would be safe for ten (10) more days—Plaintiff went to Lied to claim Zues. (*Id.*). An unidentified female receptionist ("the Lied Receptionist") at Lied informed Plaintiff that Zues had been euthanized on the morning of Tuesday, February 16. (*Id.* ¶ 15). This caused Plaintiff to have "an extensive and highly emotional breakdown," after which the Lied

---

[1] VCA notes that its proper name is VCA Antech, Inc. (#23 at 1:20).

1 Receptionist explained that Zues had been given "a 72 hour outdate" because he was uncooperative. (*Id.* ¶ 16).

Plaintiff argues that the Lied Employee was negligent in assuring him during the Lied Call that Zues would be safe for ten (10) more days, when in fact Zues would only be safe for one (1) more day. (*See id.*). According to the SAC, this negligence was the actual and proximate cause of Zues's death, which caused Plaintiff "great distress." (*Id.* ¶¶ 17, 19). Plaintiff sued Defendants Lied, VCA, and Does I–X (collectively, "Defendants") on four causes of action:[2] (1) professional negligence; (2) negligent infliction of emotional distress; (3) intentional infliction of emotional distress; and (4) wrongful death. (*Id.* ¶¶ 17–21). On September 18, 2009, the Court adopted the Magistrate Judge's Report of Findings and Recommendation ("R&R") (#18), dismissing the wrongful death claim with prejudice. (#25).

Plaintiff invoked the Court's jurisdiction under 28 U.S.C. § 1332. Plaintiff was a California citizen when the Complaint (#1) was filed, and Defendants were and remain Nevada citizens. The total amount of damages demanded on the face of the SAC is $15 million: "general damages" of $5 million dollars apiece from VCA and Lied, and "special or punitive damages" of $5 million dollars from Lied. (#12 at 8). Defendant VCA has filed a Motion to Dismiss (#23) the SAC for improper service of process, failure to state a claim, and lack of subject matter jurisdiction due to failure to plead the requisite jurisdictional amount. Plaintiff has filed a Motion for Default Judgment (#27).

## II.     LEGAL STANDARDS

### A.     Rule 12(b)(5)

Under Federal Rule of Civil Procedure 12(b)(5), a defendant can move to dismiss a case

---

[2]The causes of action are pled in somewhat disorderly fashion; however, the Court grants unrepresented plaintiffs some latitude. *See Winterrowd v. Nelson*, 480 F.3d 1181, 1183 n.3 (9th Cir. 2007). The SAC is clear enough to put Defendants on notice that these three causes of action are pled.

based on insufficient service of process. Service of a domestic or foreign corporation is controlled by Rule 4(h) and may be effected pursuant to the laws of the state where the court is located or where service is sought. 1 Moore's Federal Practice § 4.51[1] (3d ed. 2008) (citing Fed. R. Civ. P. 4(h)(1)(A); Fed. R. Civ. P. 4(e)(1)). Under, Rule 4(h)(1)(B), service may also be effected "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or law to receive service of process . . . ." Fed. R. Civ. P. 4(h)(1)(B).

**B.     Rule 12(b)(1)**

Although framed as part of its Rule 12(b)(6) argument, Defendant's claim that Plaintiff cannot possibly meet the amount-in-controversy requirement is in substance a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). In other words, if the Court finds that Plaintiff has one or more viable claims that survive a Rule 12(b)(6) analysis, but also finds that damages under such surviving claims cannot possibly exceed $75,000, then the Court should dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).

The proponent of federal jurisdiction traditionally bears the burden of proving the amount in controversy by a preponderance of the evidence. *See Lowdermilk v. U.S. Bank Ass'n*, 479 F.3d 994, 997 (9th Cir. 2007) (citing *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328–29 (11th Cir. 2006) (holding that the Class Action Fairness Act did not alter the rule)). A Plaintiff satisfies this burden by claiming the requisite amount on the face of the complaint, unless it appears to a legal certainty that the plaintiff cannot actually recover the requisite amount. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 402 (9th Cir. 1996). The "legal certainty" test applies (1) to any complaint filed in state court alleging damages above the requisite amount; and (2) to "good faith" complaints filed in federal court alleging damages above the requisite amount. *Id.* The Ninth Circuit has affirmed a district court's dismissal for lack of subject matter jurisdiction under § 1332 based on a plaintiff's bad faith claim of the jurisdictional amount. *See Christensen v. Nw. Airlines, Inc.*, 633 F.2d 529,

530–31 (9th Cir. 1980) (affirming dismissal of a diversity action claiming damages of over $10,000 based on alleged mental distress resulting from a short verbal altercation with an airline agent—anger and embarrassment could not support such damages).

**C.    Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See North Star Int'l. v. Arizona Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to

1 dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp.*
2 *Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

3     If the court grants a motion to dismiss a complaint, it must then decide whether to grant leave
4 to amend. The court should "freely give" leave to amend when there is no "undue delay, bad faith[,]
5 dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of .
6 . . the amendment, [or] futility of the amendment . . . ." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371
7 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies
8 of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d
9 655, 658 (9th Cir. 1992).

10 **III.   ANALYSIS**

11 **A.   Insufficient Service of Process**

12     Defendant VCA claims Plaintiff failed to properly serve it because VCA is incorporated in
13 Delaware, and its agent for service of process in Nevada is Corporation Trust Co. (#23, Ex. A).
14 Defendant argues that because the U.S. Marshall, on behalf of Plaintiff, served Ms. Lisa Smith, an
15 office manager at VCA Animal Hospital, that it has not been properly served. (#23 at 3:13–14
16 (citing #21)).

17     Service of a domestic or foreign corporation may be effected pursuant to the laws of the state
18 where the court is located or where service is sought. 1 Moore's Federal Practice § 4.51[1] (3d ed.
19 2008) (citing Fed. R. Civ. P. 4(h)(1)(A); Fed. R. Civ. P. 4(e)(1)). In this case, this is Nevada. Under
20 Rule 4(h)(1)(B), service may also be effected "by delivering a copy of the summons and of the
21 complaint to an officer, a managing or general agent, or any other agent authorized by appointment
22 or law to receive service of process . . . ." Fed. R. Civ. P. 4(h)(1)(B). Here, Corporation Trust Co.
23 is the agent for service of process. Service on Corporation Trust Co. would be sufficient, but it is
24 not necessary. If Lisa Smith was an officer, managing agent, or general agent of VCA, then service
25 upon her was sufficient to serve VCA.

1  The Ninth Circuit uses the following analysis:

2  Despite the language of the Rule, service of process is not limited solely to officially designated officers, managing agents, or agents appointed by law for the receipt of process. The rules are to be applied in a manner that will best effectuate their purpose of giving the defendant adequate notice. Thus, the service can be made "upon a representative so integrated with the organization that he will know what to do with the papers. Generally, service is sufficient when made upon an individual who stands in such a position as to render it fair, reasonable and just to imply the authority on his part to receive service." Generally, "[t]he determination of whether a given individual is a 'managing or general agent' depends on a factual analysis of that person's authority within the organization."

*Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988)(citations omitted). In that case, the court held that service on a receptionist was sufficient where she was "the only employee in the office when the process server arrived, demonstrating that more than minimal responsibility was assigned to her." *Id.* at 689.

Here, Ms. Smith was the office manager for VCA at its Las Vegas animal hospital. This position is of a high enough level of responsibility under the Ninth Circuit's test to effect valid service. The manager of an office certainly "know[s] what to do with the papers," if the receptionist in *Eclat* did. *Id.* at 688. If a receptionist can satisfy the test based on more than minimal responsibility, the manager of an office should satisfy the test in most cases. The Ninth Circuit noted in *Eclat* that "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *Id.* (quoting *United Food Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984)). It cannot be said that VCA did not receive sufficient notice of the complaint. The service was effected on August 27, 2009. (#21). VCA filed the present motion on September 21. (#23). VCA had sufficient notice of he SAC based on service of Ms. Smith, who was of appropriate responsibility. Therefore, the Court denies the motion to dismiss based on improper service of process.

**B.     Failure to Satisfy the Amount-in-Controversy Requirement**

The SAC seeks general and punitive damages in the amount of $15 million. Whether or not

his claims have merit, there is nothing in the record indicating that Plaintiff's claims are not asserted in good faith. However, if the Court determines "to a legal certainty" after the Rule 12(b)(6) analysis below that Plaintiff cannot possibly recover more than $75,000, then the SAC must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. As noted below, only the professional negligence action survives under a Rule 12(b)(6) analysis. If plaintiff cannot possibly recover more than $75,000 under this claim, then this remaining cause of action should be dismissed under Rule 12(b)(1).

Defendant argues that Plaintiff cannot possibly recover the requisite amount because recovery for the destruction of an animal is limited to the animal's value as personal property. *See* Nev. Rev. Stat. § 193.021. Defendant argues that because of this, the proper cause of action is conversion, not negligence, and that damages in such actions are limited to replacement value. *See Winchell v. Schiff*, 193 P.3d 946, 950–51 & n.7 (Nev. 2000). Defendant is correct that compensatory damages are limited to the market value of the animal, but this cause of action can be properly characterized as negligence.[3] Replacement value of the animal, however, is not the only measure of damages permitted in Nevada. As explained in more detail below, a plaintiff may recover for emotional harm as a measure of damages based on other underlying negligent or intentional torts if the underlying acts constitute "extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress." *State v. Eighth Judicial Dist. Court ex rel. County of Clark*, 42 P.3d 233, 241 (Nev. 2002) (quoting *Shoen v. Amerco, Inc.*, 896 P.2d 469, 476

---

[3]Plaintiff has properly pled a negligence cause of action. The alleged harm resulted from the alleged negligence of Defendants in failing to notify Plaintiff before euthanizing his dog. Plaintiff could perhaps bring an action for conversion here; however, he need not do so, and he need not forsake other viable causes of action. A negligence claim can be based on either personal injury or property damage. Nevada's economic loss doctrine bars negligence-based claims only where the loss is purely economic, "without any attendant personal injury or *property damage*." *Terracon Consultants W., Inc. v. Mandalay Resort Group*, 206 P.3d 81, 90 (Nev. 2009) (emphasis added).

(Nev. 1995) (quoting *Star v. Rabello*, 625 P.2d 90, 91–92 (1981)). For such a measure of damages to be available in a simple negligence case, the plaintiff must have been the direct victim of the negligence. *Shoen*, 896 P.2d at 477. Plaintiff has pled reckless conduct that he clearly believes was extreme and outrageous, and he has claimed that he was the direct victim of the negligent action via property damage. Therefore, for the purpose of calculating plausible damages, the Court will include a potential verdict awarding damages for emotional harm.

The replacement value of a puppy is almost certainly less than $1000. But Plaintiff also claims damages for emotional harm and punitive damages. Punitive damages are usually limited by due process to a single-digit multiplier. *Exxon Shipping Co. v. Baker*, 128 S. Ct. 2605, 2626 (2008). Additionally, in Nevada, a plaintiff must prove oppression, fraud, or malice by clear and convincing evidence to win punitive damages in any action where the duty is not based on contract. Nev. Rev. Stat. § 42.005. "Malice" means "conduct which is intended to injure a person or despicable conduct which is engaged in with a conscious disregard of the rights or safety of others." § 42.001. The statute can support punitive damages based on reckless disregard of property rights. *See Countrywide Home Loans, Inc. v. Thitchener*, 192 P.3d 243, 255–56 & n.55 (Nev. 2008). If Plaintiff can prove recklessness with conscious disregard for his rights in the animal by clear and convincing evidence, he can recover punitive damages. Under the statute, punitive damages are limited to $300,000 in cases where compensatory damages are less than $100,000. Nev. Rev. Stat. § 42.005(b).

Because the Nevada statute will allow punitive damages of up to $300,000 even where compensatory damages are under $100,000, the applicable limit here is a multiplier of nine (9) applied to the value of the puppy plus emotional damages. *Baker*, 128 S. Ct. at 2626. The Court cannot say with legal certainty that Plaintiff could not recover more than $7500 in a general verdict for the value of the dog plus damages for emotional harm. The Nevada Supreme Court has affirmed a general verdict of compensatory damages for lost business and emotional damages of $250,000

stemming from a defamation claim. *See Bongiovi v. Sullivan*, 138 P.3d 433, 452 (Nev. 2006). Therefore, under Rule 12(b)(1), the motion to dismiss the professional negligence claim based on failure to meet the requisite amount in controversy is denied.

**C.     Failure to State a Claim**

**1.     Professional Negligence**

In order to state a claim for professional negligence, a plaintiff must allege: "(1) the duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." *Morgano v. Smith*, 879 P.2d 735, 738 n.2 (Nev. 1994) (citing *Charleson v. Hardesty*, 839 P.2d 1303, 1307 (Nev. 1992)).

Here, Plaintiff has alleged that the Defendant animal hospital and Defendant animal shelter owed him a duty to take adequate care of his dog, and that this duty was breached by VCA's and Lied's failure to keep Zues safe. Particularly, Plaintiff claims that VCA sent Zues to Lied without first contacting him, and that Lied euthanized Zues during the span of time that Lied represented to Plaintiff that Zues would be safe. When Plaintiff arrived at Lied to retrieve Zues within the time span that the Lied Employee had represented to him that Zues would be safe, he discovered Zues had already been euthanized. Plaintiff claims that he would have arranged for Zues to be retrieved earlier if he had been informed it was necessary to ensure his safety, but that he was assured after multiple inquiries that it was not necessary. Plaintiff claims damages resulting from the breach. Therefore, Plaintiff has sufficiently pled duty, breach, causation, and damages, and the Court denies the motion to dismiss the professional negligence cause of action based on Rule 12(b)(6).

Defendant VCA argues that the professional negligence claim cannot possibly succeed against VCA because the dog sitter left Zues with VCA, and VCA simply called City of Las Vegas Animal Control to take Zues when he became uncooperative. (#23 at 7:25–8:3). Plaintiff makes no

1  allegations as to what VCA should have done instead. Defendant also cites *Lee v. GNLV Corp.* for
2  the proposition that VCA owed Plaintiff no duty of care because there was no relationship between
3  them. 22 P.3d 209, 212 (Nev. 2001). That case recognized a positive duty to rescue a choking
4  customer on the part of a restaurant due to the special relationship between customer and restaurant
5  and the latter's control over the premises, while noting that there is no general duty to rescue absent
6  such a relationship. *Id.* Existence of a duty is a question of law. *Id.* This is not a peril case. Plaintiff
7  argues that VCA should have called him before calling Animal Control. Although it is extremely
8  unlikely that Plaintiff's claim against VCA can survive summary judgment as to the breach and
9  causation elements, it survives a motion to dismiss under Rule 12(b)(6).

10 **2.     Emotional Distress**

11         Although it appears to be an issue of first impression under Nevada law, there is a split of
12 authority in other jurisdictions regarding whether a pet owner can recover emotional distress
13 damages for the intentional or negligent destruction of a pet. Traditionally, and in the majority of
14 states today, pets are considered to be personal property, and no cause of action lies for emotional
15 distress due to their negligent destruction. *See Kondaurov v. Kerdasha*, 629 S.E.2d 181, 187 n.4 (Va.
16 2006) (collecting cases from fourteen states and listing Hawaii as the only contrary authority); 4 Am.
17 Jur. 2d *Animals* § 116 (2009) (citations omitted). Hawaii permits recovery for serious mental
18 distress resulting from negligent destruction of personal property, even when the destruction occurs
19 outside of the presence of the plaintiff. *Cambpell v. Animal Quarantine Station*, 632 P.2d 1066, 1071
20 (Haw. 1981) (noting that Hawaii's approach to recovery for mental distress was "unique"). At least
21 five states permit recovery for emotional distress where the pet is injured or killed by willful,
22 intentional, or outrageous acts. *Kondaurov*, 629 S.E.2d at 187 n.4 (citations omitted); 4 Am. Jur. 2d
23 *Animals* § 116 (2009) (citations omitted). As explained below, a plaintiff cannot make out a prima
24 facie case of intentional infliction of emotional distress ("IIED") or negligent infliction of emotional
25 distress ("NIED") in Nevada based on the death of an animal. Although Nevada has not addressed

animals directly, it has addressed them implicitly by strictly limiting the class of victims for which a plaintiff may state a claim for IIED or NIED.

**a.      Intentional Infliction of Emotional Distress**

The elements of IIED in Nevada are: "(1) that the defendant's conduct was extreme and outrageous; (2) that the defendant either intended or recklessly disregarded the causing of emotional distress; (3) that the plaintiff actually suffered severe or extreme emotional distress; and (4) that the defendant's conduct actually or proximately caused the distress." *Nelson v. City of Las Vegas*, 665 P.2d 1141, 1145 (Nev. 1983); *see Miller v. Jones*, 970 P.2d 571, 577 (Nev. 1998). A direct victim of the underlying acts may recover by satisfying this test, but a third-party witness may only recover if he is "a close relative of the person against whom the outrage is directed." *Nelson*, 665 P.2d at 1145. Third-party recovery is allowed "where the defendant's conduct was not only outrageous but unquestionably violent and shocking. The less extreme the outrage, the more appropriate it is to require evidence of physical injury or illness from the emotional distress." *Id.* (citing Prosser, *Handbook of the Law of Torts* § 12, at 62 (4th ed. 1971)). The case law does not address whether destruction of an animal can or cannot, as a matter of law, support an IIED claim, but in NIED cases, the Nevada Supreme Court has held that as a matter of law "closeness" means blood or marriage only. *Grotts v. Zahner*, 989 P.2d 415, 416 (Nev. 1999).

Plaintiff has not sufficiently pled an IIED claim. He has pleaded "pure negligen[ce]," "careless[ness]," and "professional negligence," in failing to follow procedures. (#12 ¶¶ 17–18). Although he makes no claim of intent, and he does not use the word "reckless," the SAC clearly implies recklessness when it claims that Plaintiff told the Lied Employee that Zues was "all he had, and the only thing close to a child he'd ever had," and that he would make arrangements for Zues to be picked up as soon as possible if any emergency arose, so as to ensure Zues's safety. (#12 ¶¶ 12–13). This put Lied on notice as to the risk of severe or extreme emotional distress, and Plaintiff claims Lied consciously disregarded that risk when it euthanized Zues. Plaintiff has also claimed

1  Defendants "did cause the plaintiff great distress." (*Id.* ¶ 19).  However, the euthanization of an
2  animal outside of the presence of the owner cannot be found to be "unquestionably violent and
3  shocking," such as to support an IIED claim, as required by *Nelson*. 665 P.2d at 1145.  Moreover,
4  the Nevada Supreme Court has indicated that when the plaintiff is a third party, the victim must be
5  his "close relative," and the Court has clearly defined that term in the related tort of NIED to mean
6  a blood or marriage relation, *Grotts*, 989 P.2d at 416, which the Plaintiff here cannot possibly prove.
7  Therefore, the IIED claim is dismissed with prejudice under Rule 12(b)(6).

**b.    Negligent Infliction of Emotional Distress**

The Nevada Supreme Court has claimed that it recognizes torts for both IIED and NIED, at least in the context of wrongful employment termination, and that in either case, "the plaintiff needs to show 'extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress.'" *Eighth Judicial Dist. Court ex rel. County of Clark*, 42 P.3d 233 at 241 (quoting *Shoen*, 896 P.2d 469 at 476 (quoting *Rabello*, 625 P.2d at 91–92)).[4]  In *Shoen*, the Nevada Supreme Court stated:

> An examination of the case law indicates that Nevada has not expressly permitted damages to be recovered for the infliction of emotional distress in a negligence cause of action. If a bystander can recover for the negligent infliction of emotional distress, it is only logical that the direct victim be permitted the same recovery. Many times a tort claim may be based on evidence that presents a close case of whether an intentional or a negligent act was committed. In these cases, the direct victim should be able to assert a negligence claim that includes emotional distress as part of the damage suffered as well as an intentional tort cause of action.

---

[4]The implication that a claim for NIED must include intent or recklessness on the part of the tortfeasor appears at odds with itself and may be an indication that the Court misspoke when it characterized the nature of the claim.  Intent or recklessness is required to prove IIED, but a separate NIED claim, where recognized, requires only simple negligence.  Taken together with the passage from *Shoen* below, this line from *State v. Eighth Judicial Dist. Court* indicates that the Court was not referring to NIED as a separate cause of action, but rather to the fact that damages can also be recovered for emotional harm stemming from other intentional or negligent torts.  This measure of damages is sometimes called "parasitic damages."  *See* Dan B. Dobbs, *The Law of Torts* § 302 (West 2000).  *Rabello*, from which the line in *State v. Eighth Judicial Dist. Court* originates, involved no claim at all of NIED, but only of IIED. 625 P.2d at 91–92.

> Accordingly, we recognize that the negligent infliction of emotional distress can be an element of the damage sustained by the negligent acts committed directly against the victim-plaintiff.

896 P.2d at 477. This case permitted recovery for emotional harm to plaintiffs who are themselves injured in the underlying incident where supported by a defendant's liability for a separate tort, whether negligent or intentional. *Shoen* and *State v. Eighth Judicial Dist. Court* discuss emotional harm as a measure of damages for other torts and are not helpful in identifying the elements of a separate NIED claim in Nevada.

The Nevada Supreme Court last laid out the elements of a separate NIED claim in 1999: "the witness-plaintiff must prove that he or she (1) was located near the scene; (2) was emotionally injured by the contemporaneous sensory observance of the accident; and (3) was closely related to the victim." *Grotts*, 989 P.2d at 416. This is a version of the "*Dillon* rule." Dobbs, *supra*, § 309; *see Dillon v. Legg*, 441 P.2d 912, 920 (Cal. 1968). Nevada expressly adopted the *Dillon* rule in *State v. Eaton*, 710 P.2d 1370, 1377–78 & n.11 (Nev. 1985). In Nevada, the third prong is "as a general proposition . . . determined based upon family membership, either by blood or marriage. . . . We therefore hold that any non-family 'relationship' fails, as a matter of law, to qualify for NIED standing." *Grotts*, 989 P.2d at 416 (holding that a woman's fiancee did not meet the closeness requirement for a NIED claim in Nevada). *Grotts* overruled *State Dep't of Transp. v. Hill*, which had held that except in obvious cases, the third prong was a question of fact. 963 P.2d 480, 483 (Nev. 1998) (plurality opinion). After *Grotts*, the third prong is an issue of fact for a jury only in cases involving a blood relationship beyond "the first degree of consanguinity." *Grotts*, 989 P.2d at 416 & n.1.

Here, viewed in the light most favorable to Plaintiff, the facts in the pleadings clearly indicate that it is impossible for Plaintiff to satisfy any of the three prongs of a separate NIED claim in Nevada. Plaintiff admits that he first discovered the harm when he arrived at the shelter days after the harm occurred, and that the injured party was not a human being to which he could be related

by blood or marriage. (#12 ¶¶ 1, 15).[5] Therefore, the NIED claim is dismissed with prejudice under Rule 12(b)(6).

## IV. DEFAULT JUDGMENT

Federal Rule of Civil Procedure 55(b) permits a default judgment following the entry of default by the clerk under Rule 55(a). When the requested relief is anything other than a sum certain or a sum that can be made certain by computation, the party must apply to the court for a default judgment after entry of default. Fed. R. Civ. P. 55(b)(1)–(2). The choice as to whether a default judgment should be entered is at the sole discretion of the trial court. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A defendant's default alone does not entitle a plaintiff to a court-ordered judgment. *See id.* Instead, the Ninth Circuit has determined that a court should look at seven discretionary factors before rendering a decision on default judgment. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). These factors are: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Id*.

Once the court clerk enters a default, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). The plaintiff is required to prove all damages sought in the complaint, and those damages may not "differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). If sufficiently documented and detailed, damages claims

---

[5] Although Plaintiff refers to Zues as his "pet-relative," (#12 ¶ 17), as a matter of law, he must be related to the victim by blood or marriage to make out a NIED claim, *Grotts*, 989 P.2d at 416, and he cannot possibly make this showing.

may be fixed by an accounting, declarations, or affidavits. *See James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

Here, it is clear that VCA has not "failed to plead or otherwise defend." VCA filed the present Motion to Dismiss (#23) before Plaintiff filed the present Motion for Default Judgment (#27) and has filed several pleadings in this case. Lied, however, has apparently made no appearances or filings in this action. It was most recently served with the SAC at 655 N. Mojave Rd., Las Vegas, NV 89101. (#20). Jason Smith, Director of Operations, signed for service on August 25, 2009. The answer was due on September 14, 2009. Plaintiff is correct that Lied has failed to plead or otherwise defend. Therefore, the Court considers the *Eitel* factors.

First, it is not likely that refusing to enter default in favor of Plaintiff will prejudice his claim. There is no indication of perishable evidence or that the Court will be unable to subpoena Lied employees if the case proceeds to trial. Second and third, Plaintiff has made out a prima facie cause of action for professional negligence against Lied, but his evidence of extreme and outrageous conduct, which is required to support emotional damages under this claim, is weak. Although the Court cannot say to a legal certainty that Plaintiff cannot recover a significant sum, it is likely that he will only be able to recover the replacement value of his pet, and perhaps a small amount for emotional damages. Fourth, the sum of money requested is not recoverable. It is certain that no fact finder would award $5,000,000 in compensatory damages against Lied. Even in *Bongiovo*, where the general verdict was based on loss of business and emotional harm stemming from a defamatory statement that a plastic surgeon had caused a person's death, the verdict for compensatory damages was only one twentieth this amount. 138 P.3d at 449. Fifth, there remains a strong possibility of a dispute regarding material facts. Plaintiff's claims of breach at this stage are entirely dependent on inadmissible hearsay evidence regarding the alleged assurances he received from the Lied Employee. Sixth, the default does not appear to be excusable based upon neglect. The seventh

factor—the strong policy preference for judgment on the merits—always weighs against default judgment.

In its discretion, the Court declines to award a default judgment at this point. Plaintiff has only adduced his own self-interested hearsay evidence to support the one claim that (barely) survives this order, and it is unlikely that he could eventually recover much more than the replacement value of the animal. Perhaps if Lied continues to fail to defend, and Plaintiff adduces meaningful evidence supporting the merits of his claim, a default judgment will be appropriate for some modest amount. But at this time, a default judgment is not appropriate.

## CONCLUSION

IT IS HEREBY ORDERED THAT the Motion to Dismiss (#23) under Rule 12(b)(6) is GRANTED with prejudice as to the intentional infliction of emotional distress and negligent infliction of emotional distress claims, the Motion to Dismiss (#23) under Rule 12(b)(1) is DENIED, and the Motion for Default Judgment (#27) is DENIED.

DATED:     October 14, 2009

_____
Robert C. Jones
United States District Judge